IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARVIN BOYD,

                Plaintiff,          Case No. 3:07 CV 1192

-vs-

                                         MEMORANDUM OPINION

ALLIED HOME MORTGAGE
CAPITAL CORPORATION, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the motion to stay proceedings and compel arbitration (Doc. 8) and the motion for attorney's fees, costs, and expenses (Doc. 16) filed by Defendant Allied Home Mortgage Capital Corporation ("Allied"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. Background**

On September 10, 2005, Allied entered into an agreement to provide mortgage-related services (e.g., seek a lender for a mortgage) to Plaintiffs Marvin and Barbara Boyd. One of the documents signed by the Boyds in the execution of this agreement was an arbitration agreement. The arbitration agreement provided that "if [the parties] are not able to resolve [their] differences informally, [the parties] agree that any dispute, regardless of when it arose, shall be settled . . . by arbitration." Doc. 8, Ex. A. The agreement further provides: "If either party, you or we, fails to submit to arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorney's fees, incurred by the other party compelling arbitration." Agreement for the Arbitration of Disputes, Doc. 8, Ex. A. The Boyds executed a

promissory note for a mortgage with Defendant, Bank United, FSB, on October 4, 2005. On April 23, 2007, Plaintiffs filed a complaint in this Court against Allied and defendant Bank United, alleging breach of fiduciary duty, conspiracy, and other state law claims.

**II. Standard of Review and Applicable Law**

"A written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Higgs v. Automotive Warranty Corp. of America*, 134 Fed. Appx. 828, 830 (6th Cir. 2005) (citing 9 U.S.C. § 2). To enforce this mandate, the Federal Arbitration Act "provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Id.* (citing *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)); 9 U.S.C. §§ 3 & 4.

The issue of whether an arbitration clause is valid and enforceable is a decision for a court to make, not an arbitrator. *Haga v. Martin Homes, Inc.*, 119 Ohio App. LEXIS 1740 (Ohio Ct. App. 1999). A court determines whether in fact the parties agreed to settle a dispute through arbitration prior to compelling arbitration. *Mitsubishi Motors Cop. v. Soler Chrylser-Plymouth, Inc.*, 437 U.S. 614, 626 (1985); *Stout v. Byrider*, 228 F.3d 709 (6th Cir. 2000). The Federal Arbitration Act provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

> A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the

>making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002) (citing 9 U.S.C. § 4); *Cook v. All State Home Mortg., Inc.*, 2006 WL 2252538, 2006 U.S. Dist. LEXIS 54621 (N.D. Ohio 2006).

State contract law applies to determine whether an arbitration agreement is valid and whether defenses to its formation or enforcement apply. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995); *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005).

**III. Discussion**

Plaintiffs argue that no agreement was properly formed or the agreement is invalid, alleging that: Defendant did not sign the arbitration agreement; Plaintiffs' waiver of constitutional rights was unknowing; Defendant misrepresented facts and fraudulently induced Plaintiffs' signatures; the arbitration agreement is unconscionable; and the agreement is inapplicable to this dispute.

### A. Signature not required

The Sixth Circuit has enforced arbitration clauses that were not signed. *See Higgs*, 134 Fed. Appx. at 829. As a court in this District has previously held, in Ohio "[t]here is no requirement that an arbitration agreement be signed in order to be valid and enforceable. . . . What is required to validate the arbitration agreement and make it contractual is an offer and acceptance, supported by consideration." *Dantz v. Apple Ohio LLC*, 277 F.Supp.2d 794, 801 (N.D. Ohio 2003) (Dowd, J.) (citing *Brumm v. McDonald & Company Securities, Inc.*, 78 Ohio App.3d 96,

603 N.E.2d 1141 (Ohio App. 4., 1992)).  Plaintiffs cannot show, nor do the above-stated facts support, a lack of an offer, acceptance, or consideration in the formation of this agreement. Furthermore, the text of the arbitration agreement does not require a signature by Allied; it explicitly requires a signature by the borrower but merely provides a space for the lendor's "name," where Allied's name appears.  Defendant's failure to sign the agreement does not affect its validity or enforceability.

### B. No lack of knowledge

Plaintiffs argue that by signing the arbitration agreement they unknowingly forfeited their constitutional right to trial by jury.  As an initial matter, "[i]t is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally. . . . Indeed, a presumption exists against its waiver."  *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (N.Y. 1977) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938); *Heyman v. Kline*, 456 F.2d 123, 129 (2d Cir. 1972), *cert. denied*, 409 U.S. 847 (1972); *Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393 (1937)).   The Sixth Circuit has noted that "the constitutional right to jury trial may only be waived if done knowingly, voluntarily and intentionally, and [] whether this standard was met in a  given case is a constitutional question separate and distinct from the operation of rules of substantive contract law. . . ."  *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755-56 (6th Cir. 1985).  The question, therefore, is whether Plaintiffs in this matter knowingly and voluntarily waived their constitutional right to a trial.

"Factors to consider in determining the validity of a purported contractual waiver include the clarity of the contractual language itself, the relative bargaining power of the parties, and the mortgagor's ability to understand the provisions of the contract." *Mountain Village*, 424 F.Supp.

at 825 (citing *United States v. Wynn*, 528 F.2d1048, 1050 (5th Cir. 1976)).  Courts have applied these factors variously.  *See K.M.C.*, 757 F.2d at 757 (no waiver where oral statements by defendant varied from written terms of contract), comparing *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972) (invalid waiver where waiver not bargained over, unequal bargaining power, contract of adhesion, and "fine print . . . relied upon as a waiver of constitutional rights"); *National Equipment Rental,* 565 F.2d at 258 (no waiver where unequal bargaining power, clause buried "deeply and inconspicuously in the contract"); and *Dreiling v. Peugot Motors of America, Inc.*, 539 F.Supp. 402, 403 (D. Col. 1982) ("Defendants have presented no evidence that the waiver provision was a bargained for term of the contract, was mentioned during negotiations, or was even brought to the plaintiffs' attention. In fact, the defendants have failed to show that the plaintiffs had any choice other than to accept the contract as written."); with *D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 186-87 (1972) (valid waiver where sophisticated parties, equal bargaining power, and consideration exchanged for waiver); *N. Feldman & Son, Ltd. v. Checker Motors Corp.*, 572 F.Supp. 310, 313 (S.D. N.Y. 1983) (valid waiver where provision clearly visible and agreement bargained over); *United States v. Mountain Village Co.*, 424 F.Supp. 822, 825 (D. Mass.1976) (valid waiver where sophisticated parties, consideration exchanged for waiver); and *Global Industries, Inc. v. Harris*, 376 F.Supp. 1379, 1382 (N.D. Ga.1974) (valid waiver where equal bargaining power, contract prepared by party seeking to avoid waiver).

The agreement is titled, in bold lettering, "**AGREEMENT FOR THE ARBITRATION OF DISPUTES**."  Doc. 8, Ex. A.  It states, also in bold font, "**NEITHER [Plaintiffs] NOR [Defendant] WILL HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN COURT OR TO HAVE A JURY TRIAL ON THAT DISPUTE**."  *Id.*  The one-page agreement indicated

that it was an arbitration agreement that waived the right to a jury trial and instead adopted arbitration as a resolution for certain disputes.  However, Plaintiffs allege that there was unequal bargaining power between the parties and that representatives of Defendant "fanned" a stack of papers in front of Plaintiffs and told them to sign because they were in a hurry.  Plaintiffs complain that they were not told orally about the arbitration page or any terms of the arbitration agreement, specifically that it involved a waiver of trial rights.

Ultimately, Plaintiffs have not advanced enough evidence to show that their signing of the arbitration agreement was not knowing, voluntary, and intelligent, which it is Plaintiffs' burden to show.  *K.M.C.*, 757 F.2d at 758.  Applying the *Mountain Village* factors described above, the contractual language was clear, the relative bargaining power of the parties is asserted to have been unequal, and the mortgagor's ability to understand the language is alleged to have been lacking.  However, in light of the clarity of the arbitration agreement, the extra review time for reading the agreement, and Plaintiffs' inability to actually demonstrate a lack of sophistication on the part of Plaintiffs, these factors favor the validity of the arbitration agreement.

Plaintiffs do not indicate how many pages constituted the "fanned" pages, and the exhibits before this Court constitute only six pages besides the one-page arbitration agreement.  Further, the key provisions of that arbitration agreement were not hidden, lied about, or finely printed – the type was large, cautionary, and accurate.  The distinguishing factor here is that, even if they were rushed into signing the contract and agreement, which according to the allegations and evidence before this Court were less than voluminous, they could have taken the weeks between the signing of the arbitration agreement on September 10, 2005 and the actual execution of the note on October 4, 2005, as well as a five-day period after executing the agreement as provided in the

September 10 contract, to review the language of the contract, including the clearly-worded arbitration provision. The papers signed on September 10, 2005 provided that if Plaintiffs do not return the agreement within five days, "this Agreement will become null and void and [Allied] shall have no further obligation under this agreement whatsoever." Doc. 15, Ex. C. Further, "[d]uring that five (5) day period, [Allied] will not revoke this Agreement." *Id*. Plaintiffs had time to review the agreement and rescind it even after signing it. Despite the unequal bargaining power between the parties, this review period provides enough time to make any adhesion to the clearly-written arbitration agreement knowing, intelligent, and voluntary. It appears that Plaintiffs' primary disputes are with the terms of the mortgage agreement, and not the arbitration agreement itself. As discussed below, those issues may well be valid points of contention, but they are not for the Court to decide in the presence of a clear and plain arbitration agreement. Any disputes with the terms of the actual mortgage should be addressed by an arbitrator.

### C. No fraud in the factum

"A release is obtained by fraud in the factum where an intentional act or misrepresentation of one party precludes a meeting of the minds concerning the nature or character of the purported agreement." *Haller v. Borror, Corp.*, 50 Ohio St.3d 10, 14 (Ohio 1990). In those instances, "[w]here device, trick, or want of capacity produces 'no knowledge on the part of the releasor of the nature of the instrument, or no intention on his part to sign a release or such a release as the one executed,' there has been no meeting of the minds." *Id.* (citing *Picklesimer v. Baltimore & Ohio RR Co.*, 151 Ohio St. 1, 5 (Ohio 1949)). Fraud in the factum occurs where a party signs a document that differs from the document he or she was led to believe he or she would be signing.

However, there cannot be fraud in the factum where the complaining party had an opportunity to read the document:

> However, where there is mere misrepresentation by one party of the contents of a release, the agreement is not void for fraud in the factum when the releasor has an opportunity to read and understand the document before execution. "A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. * * * If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." *Dice v. Akron, Canton & Youngstown RR. Co.* (1951), 155 Ohio St. 185, 191, 44 O.O. 162, 164, 98 N.E.2d 301, 304, reversed on other grounds (1952), 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398; *McCuskey v. Budnick* (1956), 165 Ohio St. 533, 535, 60 O.O. 493, 494, 138 N.E.2d 386, 388.

*Haller*, 50 Ohio St.3d at 14.

As noted above, Plaintiffs could have reviewed the documents, and at the very least the arbitration agreement, in the five days following the signing of the agreement before the parties became bound by the mortgage, which was not executed until weeks later.  Plaintiffs had ample time to review the documents and object to the arbitration agreement during those review periods.  They did not do so.  Plaintiffs are precluded from now seeking to dispute the terms of the underlying mortgage in this Court rather than before an arbitrator.

### D. No fraud in the inducement

The Ohio Supreme Court has described fraud in the inducement as fraud relating not to the actual content of the contract but to the way in which a party's apparent consent was obtained:

> A release of liability procured through fraud in the inducement is voidable only, and can be contested only after a return or tender of consideration. Cases of fraud in the inducement " ' * * * are those in which the plaintiff, while admitting that he released his claim for damages and received a consideration therefor, asserts that he was induced to do so by the defendant's fraud or misrepresentation. The fraud relates not to the nature or purport of the release, but to the facts inducing its execution, as, for instance, where there is a misrepresentation as to the nature or extent of the plaintiff's injuries.' " *Picklesimer v. Baltimore & Ohio RR. Co.*, supra,

> 151 Ohio St. at 4, 38 O.O. at 478, 84 N.E.2d at 215-216. In that event, there is no failure of understanding of the party to be bound by the release as to the nature or character of his act releasing the other party from liability. Rather, the releasor claims that he was induced to grant the release upon the wrongful conduct or misrepresentation of the person so benefited. The misrepresentation may concern the economic value of the claim released, Picklesimer, supra, and wrongful conduct may include even coercion and duress. *National Bank v. Wheelock* (1895), 52 Ohio St. 534, 40 N.E. 636. So long as the releasor understands the nature and character of his act of release and that the releasee will no longer be liable on the claims concerned, or has an opportunity to do so, the fraud is in the inducement only and does not constitute a basis to find the agreement void. In that event it is voidable only, and in order to subject it to attack the releasor must first tender back the consideration paid. No tender is required for fraud in the factum, if alleged.

*Haller*, 50 Ohio St.3d at 14.

Plaintiffs make many arguments relating to the alleged unfairness of the mortgage contract into which the parties eventually entered. However, none of their arguments affect the arbitration agreement. There are no facts to support the argument that Defendant somehow mischaracterized or misrepresented the nature or effect of the arbitration agreement. It may be that they did not mention it, but they did present it in a fair and straightforward manner, giving the Plaintiffs ample of time to examine it before being bound to them by a mortgage note. As far as arguments relating to the mortgage contract, very recently a court in this District astutely stated the Sixth Circuit's position, which this Court finds applicable to the arguments raised by Plaintiffs:

> In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), the Court distinguished between arguments challenging the entire contract and claims attacking the arbitration provision itself:
>
>> Accordingly, if the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language [in Section 4 of the Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that ... a federal court may consider only issues relating to the making and performance of the agreement to arbitration. In so concluding, we not only honor the

9

> plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.
>
> *Id*. at 403-4; *see also Ferro Corp. v. Garrison Indus., Inc*., 142 F.3d 926, 933 (6th Cir.1998) (emphasizing *Prima Paint*'s holding that "the arbitration agreement is effectively considered as a separate agreement which can be valid despite being contained in a fraudulently induced contract"). Like the courts in *Prima Paint* and *Ferro*, the Court finds that the parties must bring arguments that generally challenge the contract to the arbitrator and not the court. The Court finds that the Defendants' procedural unconscionability arguments must await its audience with the arbitrator.

*Lake Erie Towing v. Walter*, 2007 WL 2907496 (N.D. Ohio 2007).  As discussed above, Plaintiffs' arguments relating to the mortgage they eventually executed do not support a finding of fraud with regard to the arbitration agreement.

### E. Arbitration agreement not unconscionable

For the same reasons discussed above, Plaintiffs' unconscionability arguments cannot succeed.  Plaintiffs argue that the promissory note and mortgage contained one-sided and unconsionable terms.  This argument, however, does not relate to the arbitration agreement, which the parties entered into separately.

To establish that an agreement is unconscionable under Ohio law, a plaintiff must demonstrate both:

> a. substantive unconscionability, by showing that the contract terms are so unfair to one party that their enforcement would be unreasonable, and
>
> b. procedural unconscionability, by showing that there was an absence of meaningful choice or understanding of the terms on the part of one party.

*Stepp v. NCR Corp.*, 494 F.Supp.2d 826, 836 (S.D. Ohio 2007) (citing *Raasch v. NCD Corp.*, 254 F.Supp.2d 847, 860 (S.D. Ohio 2003).

In evaluating unconscionability under Ohio law, this Court looks to "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Cross v. Carnes*, 132 Ohio App.3d 157 (1998). "The crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print . . . ?'" *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (citing *Ohio Univ. Bd. of Trs. v. Smith*, 132 Ohio App.3d 211 (Ohio Ct. App.1999); *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir.1965); and *Lake Ridge Acad. v. Carney*, 66 Ohio St.3d 376 (Ohio 1993)) (alterations in original)).

The case before this Court may at first glance appear to fall somewhere in between, but it is certain that there was no fine print with regard to the arbitration agreement. As noted above, it was bold, clear, and plain -- one page among only a few others with ample time in which to review and even rescind it. Plaintiffs argue that they lacked the sophisticated business acumen possessed by Defendant's employees and were rushed to sign the arbitration agreement. However, the sophistication required to read a plainly-worded arbitration agreement, which is the subject of the matter as it is before this Court, is not the same as the level of sophistication required to consent to a home mortgage. Plaintiffs have not actually advanced any evidence of a lack of sophistication on their part, but have merely concluded that they lacked it.

**F. Arbitration agreement is applicable**

Finally, Plaintiffs argue that the arbitration agreement does not apply to this dispute because the disagreement is with Bank United, not Allied. However, by the explicit terms of the arbitration agreement, it applies to "any claim or controversy of any nature arising out of or in any way related to the loan; the arranging of the loan . . . ; the funding of the loan; any loan documents; the servicing of the loan; or any other aspect of the loan transaction." Doc. 8, Ex. A. The dispute between Plaintiffs covers a range of these issues. The agreement further states, "Only disputes involving you and us may be addressed in the arbitration. The arbitration may not address any dispute on an 'class action' basis. This means that the arbitration may not address disputes involving other persons that may be similar to the disputes between you and us." *Id*. Plaintiffs aver that this language prohibits the arbitration agreement from applying to their dispute with Bank United, and Plaintiffs fear that their dispute with Bank United will be swept aside if the matter is referred to arbitration. However, Defendant Bank United has not made any motions to stay these proceedings, and in this order the Court only grants Allied's motion. Bank United would remain a defendant, as it has not shown any contractual reason why its dispute should be referred to arbitration. The case against Defendant Bank United, in other words, remains on the docket at this point. Whatever issues relating to the loan exist between Plaintiffs and Defendant Allied, however, are contractually required to be arbitrated.

### G. Attorney's fees

The arbitration agreement provides the following: "If either party, you or we, fails to submit to arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorney's fees, incurred by the other party compelling arbitration." Doc. 8, Ex. A. Allied implies that its motion before this Court to stay proceedings

and compel arbitration constitutes a "proper demand to" arbitrate. Doc. 16 at 1. Plaintiffs do not outrightly oppose this implication, but the Court need not address it because Allied has failed to meet its burden of showing an exception to Ohio fee-shifting law. Allied also requests a hearing to establish the amounts of costs and fees.

Ohio fee-shifting law follows the "American Rule," which generally requires that litigants pay their own legal fees regardless of a case's outcome. *In re Tudor*, 342 B.R. 540, 557 (Bankr. S.D. Ohio 2005). In contract law, exceptions to this rule arise where a statute requires payment of fees by a particular party, the losing party or counsel acted in bad faith, or the parties agreed contractually to shift fees. *Id*.

In this case, the parties' arbitration agreement included a fee-shifting provision. However, in the case of an agreement between a consumer borrower and a commercial lender, the Ohio Supreme Court has found in some circumstances that there is a presumption that such fee-shifting arrangement was not reached fairly. *See Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 242-43 (Ohio 1987).

> [T]he general rule against fee-shifting agreements remains, and a court may enforce a party's contractual agreement to pay, as a cost of enforcing the contract, the attorney fees of the other party only when, upon consideration of the underlying circumstances, the agreement to pay the fees can fairly be said to be the product of a "free and understanding negotiation," . . . between "parties of equal bargaining power and similar sophistication."

*Vermeer of S. Ohio, Inc. v. Argo Constr. Co.*, 144 Ohio App.3d 271, 277-78 (Ohio Ct. App. 2001) (internal citations omitted), cited in *Tudor*, supra at 561. There is also authority that, "to overcome the presumption underlying the Common Law Rule-the inherent lack of equal bargaining position in the context of a loan from commercial lender to consumer borrower- [the commercial lender will have] the burden of showing that the attorney fee provisions in the

Mortgage were the product of free and understanding negotiations between two equally sophisticated parties." Allied has not advanced evidence or otherwise sought to establish that there were free and understanding negotiations or that its negotiators were at the same level of sophistication as the Boyds. Just as Plaintiffs failed to meet their burden on showing contractual or constitutional deficiencies with regard to the arbitration agreement, Defendant Allied has failed to meet its burden with regard to the fee-shifting provision of the arbitration agreement.

**IV. Conclusion**

For the reasons described herein, Defendant Allied's motion to stay proceedings against Allied and compel arbitration between Plaintiffs and Allied is hereby granted (Doc. 8). Defendant Allied's motion for attorney's fees and costs is hereby denied (Doc. 16).

Plaintiffs' claim against defendant Bank United and Bank United's cross-claim against Allied shall proceed and are not affected by this judgment. The Court will hold a status conference on December 17, 2007 at 9:45 a.m. to establish the course of those remaining proceedings.

IT IS SO ORDERED.

                                                s/ *David A. Katz*
                                                DAVID A. KATZ
                                                U. S. DISTRICT JUDGE